Good morning, Your Honors. Thank you. And may it please the Court, my name is Dan Hall. I'm here on behalf of the appellee CEZ Prior. This case concerns Seller's attempt to terminate a purchase agreement for the acquisition of a unique commercial property located at 755 Prior Avenue in the Midway area of St. Paul without complying with its contractual obligation to cooperate in obtaining STAPL certificates reasonably satisfactory to CEZ. We're here because on CEG's motion for preliminary injunction, the District Court committed two significant errors. First, despite finding that CEZ Prior would suffer irreparable harm, the District Court denied CEZ Prior's preliminary injunction motion because it concluded that CEZ failed to show likelihood of success. That conclusion was erroneous. Second, the District Court erred when it found that CEZ Prior was not entitled to the statutory 15 additional days to close on the purchase agreement following the District Court's ruling on that injunction order. That is a pure error of law, and that's where I'd like to begin. The issue on this second issue turns on whether the District Court's December 29, 2023, standstill order was in practical effect a temporary restraining order or an injunction. The cases addressing this tell us to focus on the impact of the order and what it did, not on the words or the labels that were used. Well, counsel, should it be pursuant to the specific Minnesota statute? You're aware of the other side's argument that's built on the words pursuant to in the statute? I'm aware of that, Your Honor. And here we have a motion for preliminary injunction that is calling out this statute and is being ruled on. And that is the issue before the District Court when it issues its stay order. The District Court is not required to use magic words that refer back to a specific statute by number in issuing its decision. What matters is what was the effect of it. No. Is it the District Court's intent? Don't our cases say it's the District Court's intent? In the — I think it's the window world case. The Court describes in some parts the District Court's intent, but it separately says that intent of the District Court doesn't control appellate jurisdiction. And the cases uniformly say that in deciding whether or not something is an injunction, the test is to look at what the practical impact of that decision was. In this case, the — if you look at the context in which the December 29 order was issued, the text of the order itself, and you want to give any effect to that order, it has to be a temporary restraining order or an injunction. At the time the District Court issued that order, which stayed something, the only imminent thing that needed to be stayed was the termination of this purchase agreement, which would otherwise have occurred two days later. There was not some other issue pending in the case. The parties did not treat it as though all aspects of the case were stayed, and, in fact, CEZ responded to the counterclaim after that stay order had been issued. The parties had not even had a Rule 26 conference. It was not possible for anyone to start conducting discovery. The only thing that was going on was the purchase order. If you look at the way the District Court wrote the order, that December 29 order is a five-sentence order. The first sentence outlines what the matter is that came before the Court. The next sentence says, the Court understands that the parties' purchase agreement at issue in this case will terminate on December 31, 2023. And then the Court says what needs to happen as a result, and the Court says the Court hereby stays this matter until January 31, 2024, and that during the stay, the parties' rights, claims and defenses are preserved, including those arising under law, which in this case is the statutory 60-day extension of the time to close, and the purchase agreement. There is no reference to anything else that needed to be stayed. And the only way to give effect to the District Court's order is to treat it as staying the running of the purchase agreement. And the District Court, as well as the seller, have both given their statements that confirm that that was their understanding as well. In Apelli's brief at page 33, Apelli wrote that the standstill order was merely to stay the proceedings until CEZ's motion could be heard. Did you have to do something during that 15 days to find out what you're now asking us to do? The 15-day period is a period that after a stay or after an injunction is lifted, the buyer still has the opportunity to go forward and close. The statute says after the termination, right? It doesn't say after stay order. It says after it's lifted. So this is 549.211. The last part of subdivision 1 refers to after the injunction is lifted, there's still a 15-day opportunity to close on the purchase order. And so when the District Court issued its December 29 order, and that had the effect of enjoining the parties from doing anything until the court could do a full hearing, which is what a TRO typically does. It pauses everything, holds the status quo, and lets the District Court get full briefing, full argument from the parties at a full preliminary injunction hearing, which is what happened here in January. When that injunction order is lifted, the buyer, by statute, has 15 additional days to close. And the question that this presents for me is if this was not an injunction, if this did not enjoin the parties from the termination of this purchase agreement, what did it do? And there is nothing that indicates that it did anything if it was not a temporary restraining order or an injunction that prevented that purchase order from terminating until the parties could have their full hearing. It's our review for clear error here as to the District Court's intent. I think the question is a matter of is clear error as to the legal effect of the District Court's order. If you look at the worldwide window case, which is where this intent argument comes from, the same decision that does refer to the intent in one place says that intent is not determinative in the other place, and I think it is incredibly dangerous to start making a standard that is based on what the District Court's intentions were when it issued an order instead of what the language of the order itself did and says. Doesn't the statute, though, itself require for it to be a TRO or an injunction, the posting of security? It does not. The statute, Minnesota Statute 549.211, specifically says that the District Court can issue the injunction without the requirement for posting a bond. That's a discretionary issue for the District Court when it makes that determination. The position that the seller took here was that Rule 65 of the Minnesota Rules of Civil Procedure required the posting of the bond, but the statute is actually an exception from any kind of requirement to post a bond. There was no requirement to do so. Pardon my ignorance of Minnesota law, but in Missouri to get any kind of TRO or injunction, you almost always have to post a security. It can't be a zero security, by the way. But you almost always have to. Does Minnesota have such a general principle of law? There's not a — I mean, the general rule in Rule 65 is usually you post security. Right. But the District Court is not required to do that under the specific statute. But isn't it at a minimum required to consider the ability to pay and to come up with a bond? And is there any evidence the Court did so in this case? I don't think that there's anything in the record related to whether the District Court considered what kind of bond would be appropriate for that December 29th. We know the order doesn't say this is pursuant to 549.211, but what do you have? I mean, is it in the request? Please enter a stay or a TRO in pursuant to this section? Or do you have any evidence that the Court was considering that statute when it issued this? I mean, I think that this gets into the danger of what exactly was in the mind of the judge at the time that the order was written. I think what the test is, is what is the effect of the order itself? And here, the effect of it could only be.  What case says that? In terms of what you look at? Right. Whether it's the effect or the intent of the court. What case says you want to say it's the effect? Well, we keep asking questions about the Court's intent. So what case says it's a fact? So if you look at the Freisel decision, for example, that's the First Circuit decision written by Justice Souter sitting by designation. He addresses an argument that is based on just the words of the order using the word stay. And he says these are not substantial arguments. Does this case involve this statute? It doesn't involve this specific statute. It involves the question of how you determine whether it's an injunction or not an injunction. And he says the nature of the order is the product of its operative effect. In my mind, that's not very helpful when we're talking about a particular statute that says it has to be pursuant to this statute. Well, the request in this case, the entire case, is to come before the Court and to ask the Court to enjoin the running of the purchase agreement pursuant to a statute. Yeah. But isn't what the Court's doing here is saying, whoa, timeout, let's do a timeout, you know, an administrative stay or a standstill or something, you know, that's different than a TRO or an injunction. It doesn't necessarily have to be the same. And this statute is pretty specific about it has to be pursuant to. Well, I think that what the district court did do here is exactly what you just described. The district court said we need a timeout until we can have a full hearing on the merits here. And when the district court did that, when the district court issued an order to that effect, that was a TRO. That's what a TRO is. It's a timeout until the district court can address the next issue. I do want to turn a little bit to the issue of — Just one quick question. You want to decide a First Circuit case. Any Minnesota cases that say we should be looking at the effect of this versus the intent of the court? I don't have a cite for you on a Minnesota case there. I would point you to the Tommy v. Stewart case, which does some analysis of 549, and to the DJ Enterprises case that it cites within there. I did want to turn briefly to the issue of the substance of denying the preliminary injunction, because the district court's decision on that issue was that there was no evidence other than a single e-mail to support the conclusion that the seller had failed to cooperate with — And it's reasonably cooperate, too, right? Reasonably cooperate with tenant estoppel certificates that are reasonably satisfactory. Correct. And the record shows that these issues were discussed in September. There was the October 13 communication with a complete revision. And then there were multiple additional attempts on October 16, on October 25, and on October 30 to try to address these issues directly with the seller, with no further response from the seller after the seller simply said, we reject the tenant estoppel certificates that you provided. And the district court's decision that there was no additional evidence ignored all of those additional documentary pieces. And it's two and a half months later until you sue, right? Excuse me? It is two and a half months later. I'm trying to help you on time. And it's two and a half months later until you sue, right? No, because the lawsuit was filed at the end of November in — It was a month and a half. So it was a month and a half. Month and a half. Thank you. I reserve the remainder of my time for rebuttal. Thank you, Mr. Hawke. The court will hear from Mr. Kovacs. Thank you, Your Honors. Good morning. Counsel, may it please the Court, my name is James Kovacs, and I represent the Appalachee 755 North Pryor Ave, LLC. And this Court should affirm that the defendant,    denying CEZ's motion for preliminary injunction for two reasons. And the first is because the district court did not abuse its discretion in denying that motion. And secondly, because CEZ is not entitled to any additional time to close under the statute. And if I could pick up where my colleague left off on the abuse of discretion issue, I would just like to emphasize how deferential that standard is. And I know Your Honors are very familiar with the standards of review. But typically, an abuse of discretion happens when a district court fails to consider a necessary or important factor. They commit clear error when they're weighing the factors, or they give too much weight to an improper or irrelevant factor. None of those things happen in this case. We have a motion for a preliminary injunction. There are four data phase factors that are well established and everyone knows about. The district court applied those factors based on the evidence, and it weighed those factors. And in doing so, regarding the first factor, which is likelihood of success on the merits, which CEZ spends its most of its time talking about, the district court determined that the evidence in the record, which was very limited given the way that the hearing progressed, mainly consisting of e-mails, that that evidence supported the position that Pryor Abb desired to cooperate with CEZ in the obtaining of estoppel certificates. And when you look at the record as a whole, that is a reasonable determination to make based on the evidence. And I would point the court to the e-mail from October 13th of 2023, and that is where Pryor Avenue sends a form standard estoppel certificate to CEZ for their review and says, and then 10 days later after that, and for context, we're approaching the closing. The closing was on October 30th or October 31st, so we're just a few weeks ahead of that, and Pryor Abb sends a form estoppel certificate. Ten days later, CEZ sends back a document that is no longer an estoppel certificate. It has been heavily revised and has, at this point, is essentially an attempt to make Pryor Abb renegotiate all of its leases with its tenants. Pryor Abb did not have to agree to that. The district court make a specific finding that it required releasing, re-leasing of the premises. That specific finding is not in there. Okay. What's the closest the court gets one of your themes in your brief? What's the closest that the court gets to making a finding like that, that it had that big an effect? Well, I think, Your Honor, I think the findings turn on the term that you brought up earlier, reasonable cooperation, okay? And the district court cites Black's Law Dictionary for what an estoppel certificate is, and it's a very simple form that says you have a lease, your rent is paid, and it's very simple. If you look at in the record is the revised version of the estoppel certificate that CEZ provided. It wants to bring in several other issues like the CAM charges, your rent is going to go up, and many, many additional things, and that is no longer a standard form estoppel certificate. And so to answer your question directly, I think the citation to Black's Law Dictionary about what an estoppel certificate is, is the closest to that. And when you compare that with the revised form that CEZ sent, it's evident that that's not a standard estoppel certificate anymore. And what we're dealing with is reasonable cooperation, okay? It doesn't say that Pryor Ave. has to agree to whatever CEZ wants. So the question is, was there cooperation? And in the e-mail that I cited before, the October 13th e-mail that the district court relied on in reaching its finding, Pryor Ave. says, we don't agree to this, but how do you wish to proceed? It didn't say it wasn't going to agree no matter what. It said, how do you want to proceed? That's a negotiation. That is cooperation. And so the district court had evidence to support its determination that there was reasonable cooperation. And based on that, it found that CEZ was not likely to succeed on the merits. And that determination is sustained by evidence in the record. Just very briefly, the second factor that is brought up by CEZ is the balance of harms. And the district court came to the conclusion in part, the conclusion that the balance of harms weighed in favor of Pryor Ave., in part because there was no evidence in the record that CEZ had the money to close. And unfortunately — But that's not the conclusion, of course. The conclusion, of course, is that irreparable harm leans in favor of granting relief. Are we communicating? Yes. The district court did find that irreparable harm would go. That's the second factor. The third factor, talking about the balancing of the harms, weighed in favor of Pryor Ave., and that's because there was no evidence in the record that they could even complete the transaction. Unfortunately, CEZ is attempting to blame the district court for not having an opportunity to introduce evidence to prove it had the funds. But CEZ was the moving party. It was given an evidentiary hearing. It had every opportunity to introduce the evidence it wanted to. And it chose not to introduce any such evidence. And so based on that fact and the evidence that actually was introduced, the e-mails and the evidence of the facts surrounding the transaction, the many, many delays that CEZ had in closing, all suggest that CEZ did not have the money to close. And just to conclude on this abuse of discretion issue, Your Honors, that CEZ disagrees with the district court's decision is not enough to reverse, and that CEZ thinks its evidence could establish some other conclusion is not enough to reverse. Because the district court applied the correct factors and weighed those factors, which it had discretion to do, and it came to a conclusion that is supported by the evidence, this Court should affirm. Moving to the statutory arguments regarding Minnesota Statute Section 559.211. The first question, as Your Honors have addressed, is was the stay order issued on December 29th an injunction? And the answer to that question is no, it was not an injunction. And the first reason why we know that is because the district court said it was not an injunction, and the district court made very clear that it was not intending to issue injunctive relief or any affirmative relief of any kind. CEZ's argument is it doesn't matter what the district court says. You look at the effect of the order. Well, the effect was simply to pause the proceedings until the merits of the motion could be heard. And that's not necessarily a TRO. It sure smells like a TRO, though, you know, in the sense that it didn't prevent you from terminating the contract. It did prevent that at that time, Your Honor. That is true. But if you look at the context of how this order was issued, the district court did not analyze any showing made by CEZ. CEZ did not have any affidavits or make a showing that was sufficient to warrant the granting of a TRO. The context is that CEZ had delayed in bringing this action and then found itself before the district court with two days left in the statutory deadline period. So the district court said, I cannot hear this within that time, and so let's pause it, and I will make a decision based on a record in the future. And if you look at the ---- That's ugly. That's a lot like a TRO, though. I mean, they're usually based on a very thin record just to kind of hold things in place until we can decide whether an injunction gets issued. Your Honor, my response to that would be, if you look at the briefing that led up to that, the vast majority of the relief requested by CEZ was to have the case remanded. There was very little discussion about injunctive relief. And that, coupled with the circumstances ---- In the briefing leading up to the stay order, so to speak, any mention of 559-211? No, Your Honor. And if you look at the statute, it says that in order to get the additional 15-day period, the injunction or TRO must be issued pursuant to the statute. And to be clear, Prior Ave. is not arguing or taking the position that some magic language needs to be included in order for that to apply. But there should be some indication in the record that the district court is relying on that authority when it issues the injunction. And it's clear in this case, it may be difficult to determine the district court's intent in other cases. But in this case, it's not, because the district court stated explicitly that it was not attempting to grant any affirmative relief or any additional statutory rights to CEZ. It simply meant to stay the manner. And focusing on the language of 559-211 and the security requirements, I think that Minnesota law does allow district courts to waive the security requirement, but it's the Ecolab case that we cited, which is a Minnesota case, that says if you're going to do that, you have to state explicitly why you're doing that. And Minnesota, the statute at issue here has a very similar provision. It states explicitly, and I'll read from the statute, that the district court, quote, has the discretion to grant the order without requiring the giving of security. But then it continues and says that in the exercise of that discretion, the court shall consider as one factor the moving party's ability to afford monetary security, end quote. So the district court... That's a Minnesota statute you're quoting, right? This is the statute at issue, Minnesota statute section 559.211. It's at the very end of that first subdivision. Do you think that's a substantive rule of law or a procedural rule of law? I have to ask you. I think it's substantive because they're seeking to get relief from that particular provision. And so the district court could have issued an injunction without requiring security. But in order to do so under the statute, pursuant to the statute, it would have had to make a finding about security and at a minimum make a finding about whether or not CEZ had the ability to post any security. And no information about the ability to post security was before the district court when it issued its December 29th State Order. And the district court did not address the issue of security at all because in the district court's mind it was not issuing an injunction pursuant to the statute. And in fact, we know that if the district court would have issued a TRO or an injunction, that it would have required security. And we know that because the district court said that on the record. If you look at page 15 of the transcript of the hearing, the district court says, quote, and so one of the things that would happen if I granted an injunction here is that I would require a bond in the amount presumably of the sale of the contract. So if the district court was intending to issue an injunction, it would have required a bond in this case. And particularly in this case where the question is do they have the money to close, it would make sense to post a bond in the amount that they need to have at closing. And the district court did not consider that in the December 29th Order. So even if this Court were persuaded that the December 29th Order could somehow be converted to an injunction or a TRO, it's not an injunction or a TRO under the statute, pursuant to the statute. And therefore, CEZ is not entitled to the statutory relief. Alternatively, even if this Court thinks it was an injunction and thinks it was an injunction under the statute, the relief provided is 15 additional days to close. The district court issued its order dissolving an injunction, if that's how the court would see it, on January 29th of 2024. And even if that entitled CEZ to 15 additional days, those days ran by February 13th of 2024. The notice of appeal in this case wasn't even filed until February 22nd of 2022, which is more than a week after the supposed 15-day period expired. Statutory deadlines, the effects of court orders, none of that is stayed pending an appeal. Filing an appeal does not preserve some 15-day period that CEZ thinks it's entitled to. CEZ would have had to do something to preserve that period, file a motion to seek a stay or toll the running of that period. It could have, if it had the money, tendered the money and then come before Your Honors to seek reversal of the district court's opinion. It did none of those things. And this argument also applies to the 2-day argument that CEZ advances based on a footnote in the district court's order. They didn't talk about the 2-day argument, right? Correct. And that argument, yeah. That argument is nowhere to be found in the record of the district court, and so this court doesn't have to consider it. But even if this court wanted to consider it, again, 2 days from January 29th would have been January 31st. And so any 2-day period that may have existed is now gone. In conclusions, Your Honor, Your Honors, this case boils down to the fact that CEZ has never had the money to close on this transaction. Is that in the record? The district court did not make a finding about didn't have the money, right? I know it's one of your themes, but the district court did not make a finding about it. The district court found that there was no evidence that they had the money. The district court did not find that they did not have the money, to be clear. Right. I think if you look at the context of this case and all of the facts surrounding it, I think that's a reasonable determination or inference that could be made. But in any event, because they didn't have the money, they have tried to delay this to the detriment of prior avenue. So if CEZ had the money, Your Honor, they could have ended this case very easily by tendering it at closing or in the 60 days they were given under the statute or even if they were entitled to additional days, 15 or 2, after the district court issued its order. They have never done that. And now we find ourselves 2 years out from the purchase agreement and just about a year out from when CEZ didn't close and when the statutory notice was sent. And so we would respectfully request that this Court affirm and put this transaction to rest. Thank you. Very well. Thank you. Just a few brief points in rebuttal. At page 94 of the appendix, you'll see the portion of the opening brief seeking a TRO that refers specifically to Minnesota Statute 549.211. It's plainly called out for the district court. The reason the timing was so tight for the district court here is that the case was only removed, I think, on December 27th. Then the TRO motion was brought before the district court on December 28th. The district court had a conference with the parties and then issued its decision on December 29th. Expecting the district court to use very detailed words on that shortened timeline I think is unreasonable. Well, even if that applied, wouldn't you have needed to tender the payment price within the 15 days? Well, the district court found that the 15 days wouldn't apply, so there was nothing to do to tender. The district court erred by depriving my client of the ability to go forward at that point. As to the last issue that was mentioned, the balance of harms piece, there were multiple exhibits in the record that we cite as well as a tender of testimony from Mr. Clapp, who was in the courtroom, to confirm, following a question directly from the district court, that he did have the money and that they would be able to close. The district court didn't hear that testimony, but it was offered to the district court. I see that I am out of time here, Your Honors. Thank you. Thank you, Mr. Hull.